UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

**CAPITAL CASE**

CIVIL ACTION NO. 06-CV-181-JBC

VICTOR DEWAYNE TAYLOR                                                        PETITIONER

V.                 **MEMORANDUM OPINION AND ORDER**

THOMAS SIMPSON, Warden                                      RESPONDENT

\*\*\*\*\*     \*\*\*\*\*     \*\*\*\*\*     \*\*\*\*\*

The Court considers Taylor's motion for discovery under Rule 6 of the Rules Governing Section 2254 Cases [R. 45]. For the reasons explained below, this motion will be granted in part.

## BACKGROUND

Taylor and co-defendant George Wade were charged in Jefferson Circuit Court with the murder, kidnapping, robbery, and sodomizing of two high school students, Richard Stephenson and Scott Nelson, whom they encountered while the students were on their way to a football game. Upon a change of venue, both Taylor and Wade were tried in Fayette Circuit Court.[1] Taylor's jury trial concluded on April 30, 1986, with the jury finding him guilty of two counts of murder, kidnapping, and first-degree robbery, and guilty of one count of first-degree sodomy. On May 23, 1986, consistent with the jury's

---

[1] Taylor and Wade were tried separately, with Wade being tried first. Wade was convicted of two counts of murder, kidnapping, and first-degree robbery, but was acquitted of sodomy. Wade received a sentence of life imprisonment.

recommendation, Taylor received a death sentence on each of the kidnapping and murder charges as to each victim, giving Taylor four death sentences.

The Kentucky Supreme Court affirmed Taylor's conviction on direct appeal but remanded for resentencing.[2] Taylor then moved the trial court, pursuant to RCr 11.42, to vacate, set aside, or correct sentence. The Fayette Circuit Court denied that motion, and on October 25, 2001, the Kentucky Supreme Court affirmed that denial.

In June of 2006, Taylor filed the present action, pursuant to 28 U.S.C. § 2254, seeking a writ of habeas corpus. As grounds for the petition, Taylor lists fifty-four (54) claims for habeas relief. Taylor's motion for discovery under Rule 6 of the Rules Governing Section 2254 Cases concerns only two of those claims, Claims 12 and 13, wherein he contends that his equal protection rights under the Fourteenth Amendment of the U.S. Constitution were violated by the prosecution's use of peremptory strikes to remove African-Americans from the petit jury, as recognized in *Batson v. Kentucky*, 476 U.S. 79 (1986). Taylor argues that the discovery which he seeks will likely be relevant to his *Batson* claim or will lead to such relevant evidence. Specifically, Taylor's motion seeks the following information:

> 1) any and all notes, documents, memoranda, or reports (including those recorded on paper, audiotape, videotape, electronic, or other form) generated by the Commonwealth in connection with Taylor's voir dire;

---

[2] The Kentucky Supreme Court concluded that while Taylor was death-penalty eligible, the Fifth and Fourteenth Amendments of the U.S. Constitution prohibited imposing the death penalty for kidnapping *and* murder of the same victim. For this reason, the Supreme Court vacated Taylor's two death sentences on the kidnapping charges and remanded for resentencing on those charges as Class A felonies. Taylor's two death sentences on the murder charges remained intact.

2) any and all notes regarding the jury selection proceedings in all other cases prosecuted by Ernie Jasmin while he was employed by the Jefferson County Commonwealth Attorney's Office that are in Respondent's actual or constructive possession or control;

3) any and all notes, documents, memoranda, reports, audio or video recordings, training materials, or manuals regarding jury selection policies and practices, including training materials on this subject, utilized by the Jefferson County Commonwealth Attorney's Office between the time Ernie Jasmin joined the Jefferson County Commonwealth Attorney's Office and the conclusion of Taylor's trial.

R. 45, pg. 1.

## ANALYSIS

The standard that governs the grant or denial of discovery in a habeas corpus action is contained in Rule 6 of the Rules Governing § 2254 Cases, which provides, in relevant part, as follows:

> **Rule 6. Discovery**
>
> (a) **Leave of Court Required.** A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. . . .
>
> (b) **Requesting Discovery.** A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

*Id.*

The origin of Rule 6 is found in *Harris v. Nelson*, 394 U.S. 286, 295 (1969), in which the Supreme Court held that the ordinarily broad discovery provisions of the Federal Rules of Civil Procedure do not apply in habeas corpus proceedings. The federal courts nevertheless have the inherent power to fashion appropriate procedures, including

3

discovery, to resolve habeas corpus petitions as law and justice require. *Harris,* 394 U.S. at 300. This view announced in *Harris* led the Supreme Court to promulgate the original version of the Rule as part of the Rules Governing § 2254 Cases. *See Bracey v. Gramley,* 520 U.S. 899 (1997).

"Habeas corpus Rule 6 is meant to be 'consistent' with *Harris.*" *Bracey*, 520 U.S. at 909. "Granting discovery is left to the discretion of the court, discretion to be exercised where there is a showing of good cause why discovery should be allowed." 1976 Advisory Committee Notes, Rule 6 of the Rules Governing § 2254 Cases. The court's role is clear: "where specific allegations before the Court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief, [then] it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Harris,* 394 U.S. at 300.

Discovery is not guaranteed to habeas petitioners by either *Harris* or Rule 6. Habeas corpus petitioners, even those who face the death penalty, have no automatic right to discovery under the Rule. *Bracey,* 520 U.S. at 904. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Id.* "Rule 6 embodies the principle that a court must provide discovery in a habeas corpus proceeding *only* 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief.'" *Beuke v. Houk,* 537 F.3d 618, 654-55 (6th Cir. 2008) (citing *Bracey,* 520 U.S. at 908-09) (emphasis in original)).

4

A habeas petitioner who seeks discovery has the burden to establish that the specific information he seeks is material to his claim or claims for relief. *Hodges v. Bell,* 548 F.Supp.2d 497 (M.D. Tenn. 2000). The petitioner must "point to specific evidence that might be discovered that would support his constitutional claims ..." in order to establish good cause. *Burns v. Lafler*, 328 F.Supp.2d 711, 718-19 (E.D. Mich. 2004) (citing *Marshall v. Hendricks,* 103 F.Supp.2d 749, 760 (D.N.J. 2000), *rev'd in part on other grounds,* 307 F.3d 36 (3rd Cir. 2002). This burden cannot be met with conclusory allegations. *Williams v. Bagley,* 380 F.3d 932, 974 (6th Cir. 2004), *cert. denied*, 544 U.S. 1003 (2005) (citing *Ward v. Whitley,* 21 F.3d 1355, 1367 (5th Cir.1994)). "Even in a death penalty case, 'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing.'" *Stanford v. Parker*, 266 F.3d 442, 460-61 (6th Cir. 2001) (quoting *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 301 (3rd Cir.1991)).

Additionally, a death-sentenced habeas corpus petitioner may not transform a motion for discovery into a fishing expedition. *Burns v. Lafler,* 328 F.Supp.2d 711, 718 (E.D. Mich. 2004) ("[A] district court does not abuse its discretion in denying a habeas petitioner's request for discovery, when the request falls more in the category of a 'fishing expedition masquerading as discovery.'") (quoting *Stanford,* 266 F.3d at 460)). That being said, a habeas petitioner is not required to show that the requested discovery would "unquestionably lead to a cognizable claim for relief" in order to obtain discovery. *Keenan v. Bagley,* 262 F.Supp.2d 826, 838 (N.D.Ohio 2003). A petitioner need only establish that the specific information sought is material to his possible entitlement to relief. *Hodges,* 548

F.Supp.2d at 497. If the petitioner would not be entitled to relief, even if the facts sought to be developed by discovery were all found in his favor, the Court will not err in denying the discovery request. *Id.* (citing *Stanford,* 266 F.3d at 460). Further, the court will not abuse its discretion when it denies discovery of facts that, if shown, would be merely cumulative and thus not material. *Williams,* 380 F.3d at 976-77.

A petitioner seeking discovery need not satisfy the stringent requirements established by 28 U.S.C. § 2254(e)(2) that govern the availability of evidentiary hearings in a habeas corpus proceeding. See 17B Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Vikram D. Amar, *Federal Practice & Procedure,* § 4268.4 (West 2007) ("Although both discovery and an expanded record may be of value at an evidentiary hearing, they are also provided 'in an effort to avoid the need for an evidentiary hearing.'") (citing *Blackledge v. Allison,* 431 U.S. 63, 81 (1977)). Indeed, discovery may show an evidentiary hearing to be unnecessary: "The court may ... authorize such proceedings with respect to development, before or in conjunction with the hearing of the facts...." *Harris,* 394 U.S. at 300.

This Court is aware that such a view is not unanimously held by all of the federal courts. *See Hodges,* 548 F.Supp.2d at 497-98 (citing *Moen v. Czerniak,* Case No. 02-10-JE, 2004 WL 1293920 at *1 (D. Oreg. June 10, 2004) ("Discovery under Rule 6 must be considered in light of the provisions of 28 U.S.C. § 2254(e)(2) which limit the scope of federal habeas corpus review to the state court record except [in] certain specified circumstances...."). Even so, in this court's view, the rationale stated in granting the

6

Respondent's motion to expand the record under Rule 7 (R. 33), applies with equal force to Rule 6 and its limited relationship to 28 U.S.C. § 2254(e)(2). (R. 49, pp. 9-16).

A number of other federal decisions, published and unpublished, reflect this approach. *See Stokes v. Roe*, 18 F. Appx. 478, 479 n. 1 (9th Cir.2001) ("Rule 6 permits discovery in habeas cases, even if an evidentiary hearing is not permitted under the Anti-terrorism and Effective Penalty Act of 1996.") (citing *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir.1997) ("[D]iscovery is available to habeas petitioners at the discretion of the district court judge for good cause shown, regardless of whether there is to be an evidentiary hearing."); *East v. Scott,* 55 F.3d 996, 1002 (5th Cir.1995) ("Allegations that are facially sufficient to entitle a petitioner to discovery under Rule 6 might not entitle a petitioner to an evidentiary hearing if discovery reveals the absence of any genuine issues of disputed fact.").

At least one other district court rejected the argument that the standard of Rule 6 must be applied in conjunction with § 2254(e)(2). *Payne v. Bell,* 89 F. Supp.2d 967, 970 (W.D. Tenn. 2000) ("[A] petitioner may show good cause under Rule 6 without meeting the high standard for an evidentiary hearing under the AEDPA.") (citing James L. Liebman and Randy Hertz, *Federal Habeas Corpus Practice and Procedure,* p. 708 n. 4 1998 ("Although recent legislation limits the availability of evidentiary hearings in certain circumstances, it does not appear to limit other fact-developing techniques ... for proving factual allegations through evidence generated with the aid of financial assistance, discovery, and other investigative measures.")). In short, this Court again rejects the proposition that the higher

7

standard of § 2254(e)(2) for evidentiary hearings governs the good-cause analysis under Rule 6.

## THE *BATSON* DISCOVERY REQUEST

**1.     Procedural Background**

In Grounds 12 and 13 of his habeas petition Taylor, an African-American,[3] contends that his Fourteenth Amendment right to Equal Protection was violated at trial by the prosecution's use of peremptory strikes during jury selection to remove African-Americans from the petit jury. Specifically, Taylor alleges that the two prosecutors who tried his case[4] in April of 1986 used four of their nine peremptory challenges during jury selection to exclude African-Americans from his jury solely because of their race. Taylor raised this challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986). Taylor submits that he is entitled to the discovery which he seeks because such discovery will likely be relevant to his *Batson* claim or will lead to relevant evidence that will further support that claim.

At the time of Taylor's trial, the law in this area was governed by *Swain v. Alabama*, 380 U.S. 202 (1965), "in which [the Supreme] court recognized that the purposeful exclusion of members of the defendant's race from his petit jury would work a denial of equal protection under the Fourteenth Amendment to the federal Constitution, but held that the defendant would have to prove a pattern of racial discrimination in prior cases as well

---

[3] As such, Taylor is a member of a cognizable racial group. The murder victims in this case were both Caucasian.

[4] Following a change of venue from Jefferson Circuit Court to Fayette Circuit Court, Taylor continued to be prosecuted by the Jefferson County Commonwealth Attorney's Office. Specifically, Taylor was prosecuted by Assistant Commonwealth Attorney Ernest Jasmin, the lead prosecutor, and by Assistant Commonwealth Attorney Julie Brown.

as his own to prevail." *Ford v. Georgia,* 498 U.S. 411 (1991). *See also Trevino v. Texas,* 503 U.S. 562, 567(1992) ("[T]he standard of proof for an equal protection violation under *Swain* required a showing of racial exclusion in 'case after case.'") (citing *Swain,* 380 U.S. at 223); *Jefferson v. Morgan,* 962 F.2d 1185, 1190-91 (6th Cir.1992), *cert. denied,* 506 U.S. 905 (1992) (discussing *Swain* and *Batson* in the context of grand jury selection).

On April 30, 1986, the same day Taylor's jury trial concluded, the U.S. Supreme Court decided *Batson,* a case that involved the same Jefferson County Commonwealth Attorney's Office that prosecuted Taylor. In *Batson*, the Court for the first time held that a criminal "defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Batson*, 476 U.S. at 96-97. In doing so, *Batson* explained that the defendant first must establish a prima facie case by showing that he is a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race. *Id.*

Most importantly for the present motion, the Court in *Batson* elaborated that a criminal defendant may show "any relevant circumstances" that raise an inference of purposeful discrimination, *i.e.*, that the prosecution used its peremptory challenges to exclude veniremen from the petit jury on account of their race. *Id.* Once the defendant makes such a prima facie showing, the burden shifts to the prosecution to come forward with a race-neutral explanation for the exercise of its peremptory strikes to remove potential black jurors. This burden may not be satisfied merely by the assumption that such minority jurors will be biased in a particular case because of their race. Further, the

9

prosecutor may not rebut the prima facie showing merely by the denial of a discriminatory motive or affirmatively asserting good faith in making individual juror selections. *Id.* at 98. *See United States v. Torres-Ramos,* 536 F.3d 542, 558-59 (6th Cir.2008), *cert. den.,*129 S.Ct. 772 (2008); *United States v. Kimbrel,* 532 F.3d 461, 466-67 (6th Cir. 2008). The defendant then must persuade the trial court that such ostensibly neutral explanations are a mere pretext for racial discrimination in jury selection.

In 1987, the Supreme Court made the *Batson* decision retroactively applicable to all criminal cases, such as Taylor's, that were pending on direct appeal at the time the *Batson* decision was rendered. *See Griffith v. Kentucky,* 479 U.S. 314, 328, (1987). *Griffith* was another case alleging an equal protection violation in jury selection. Again, the same prosecutor's office that prosecuted Taylor and Batson, the Jefferson County Commonwealth Attorney's Office, also prosecuted Griffith. Obviously, neither Taylor's counsel nor the prosecutors involved knew at Taylor's trial in 1986 that the prior requirements of *Swain* for establishing racial discrimination in jury selection would be liberalized by *Batson*, or that the Supreme Court would later hold in *Griffith* that the *Batson* decision was applicable retroactively to all criminal cases then pending on direct appeal at the time of the *Batson* decision.

Jury selection in Taylor's trial began in April of 1986. The venire panel consisted of thirty-eight (38) potential jurors, seven (7) of whom were African-Americans. One of the black jurors was excused for cause during the selection process, which left six black jurors remaining when the parties began to exercise their peremptory strikes. Taylor used a peremptory strike to remove one black juror. The prosecution exercised eight of its nine

peremptory challenges; four of those eight were used to remove four black jurors from the potential jury panel, which left only one black juror remaining on the petit jury. That juror served on the jury that convicted Taylor.

After the peremptory strikes were concluded and prior to the swearing of the jury, Taylor's counsel objected to the prosecution's use of its peremptory challenges, arguing that "the jury we now have contains only one minority member. It is noted that the Commonwealth used I believe, half of their strikes to exclude two-thirds of minority members left on the panel. We would object to the seating of this jury." TE 4/7/86, pp. 9-10. The trial court overruled Taylor's objection; the jury was sworn, and the case proceeded to trial.

On direct appeal, Taylor asserted forty-four (44) claims of error, including his *Batson* claim. The Kentucky Supreme Court summarily rejected the *Batson* claim, among others, noting that its opinion concentrated only on *meritorious* claims. Specifically, the Kentucky Supreme Court stated:

> Taylor, through counsel, raises forty-four assignments of alleged error in this appeal. We have carefully reviewed all of the issues presented by Taylor and this opinion will concentrate on the question of the admissibility of the Wade confession and the propriety of the trial judge's refusal to grant a second change of venue. Allegations of error which we consider to be without merit will not be addressed here.

*Taylor v. Commonwealth*, 821 S.W.2d 72, 74 (Ky. 1990).

Taylor then moved the trial court, pursuant to RCr 11.42, to vacate, set aside, or correct his sentence. In a proposed amendment to that motion, Taylor again raised his *Batson* claim in this post-conviction action and later introduced evidence in support of that

claim at an evidentiary hearing. The trial court denied Taylor's RCr 11.42 motion, and that denial was affirmed on appeal.

**2.    Procedural Default.**

In view of this procedural background, the Court must now consider the Respondent's argument that Taylor is not entitled to discovery in respect to his *Batson* claim because the *Batson* claim was procedurally defaulted. This exercise is necessary because if the claim is procedurally defaulted, and if cause and prejudice for the alleged default cannot be established by the requested discovery, then Taylor will be unable to satisfy the good-cause test of Rule 6. *See Payne v. Bell,* 89 F.Supp.2d at 971 ("[E]ach request [for discovery] must seek to discover evidence relevant to proving a claim before the court or to demonstrating a justification excusing procedural default."). *See also Braden v. Bagley,* Case No. 2:04-CV-842, 2007 WL 1026454 at *10 (S.D. Ohio 2007) (granting the motion of a habeas petitioner to depose a mitigation specialist where the discovery request was reasonably calculated to lead to evidence that could demonstrate a justification for excusing the apparent default of the petitioner's claim).

Therefore, the Court must determine whether Taylor's *Batson* claim was procedurally defaulted, and if so, whether the requested discovery would nevertheless be material to excuse the default. In reaching this determination, the Court pauses briefly in its Rule 6 analysis to review the basic principles of the procedural default doctrine. The doctrine rests on considerations of comity and federalism. *See Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir.1997) (citing *Lambrix v. Singletary*, 520 U.S. 518, 522-23 (1997)). Essentially, it provides that the federal courts "will not reach a question of federal law

decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729 (1991). An "independent and adequate state ground" will bar consideration of those federal claims in a federal habeas corpus proceeding that have been defaulted under state law, unless the default is excused. *Coleman,* 501 U.S. at 729-30; *Brown v. Allen,* 344 U.S. 443, 486-87 (1953).

A federal claim brought by a state prisoner in a habeas action may become procedurally defaulted in state court in two different ways. *See Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir.2006). A prisoner first may procedurally default a given claim by failing to comply with an established state procedural rule when presenting his claim at trial or on appeal in the state courts. *See Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

If the state courts rely on the prisoner's procedural failure to refuse to address the merits of the prisoner's constitutional issue, and the state procedural rule involved is an adequate and independent ground on which to preclude relief, then the federal courts will hold the prisoner's habeas claim to be procedurally defaulted. *Williams,* 460 F.3d at 806 (citing *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986)). Thus, the federal courts will not reach the merits of the procedurally defaulted claim unless the petitioner is able to demonstrate cause for the default and prejudice resulting therefrom or that manifest injustice will result if the claim is not addressed. *Id.* (citing *Lundgren v. Mitchell,* 440 F.3d 754, 763 (6th Cir.2006)).

The 4-prong test announced in *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986), determines when a procedurally defaulted claim may receive federal review:

> [The] *Maupin* decision sets out four inquiries that a district court should make when the state argues that a habeas claim has been defaulted by petitioner's failure to observe a state procedural rule. First, the court must determine whether there is such a procedural rule that is applicable to the claim at issue and whether the petitioner did, in fact, fail to follow it. *Maupin,* 785 F.2d at 138. Second, the court must decide whether the state courts actually enforced its procedural sanction. *Id. T*hird, the court must decide whether the state's procedural forfeiture is an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim. "This question will usually involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims." *Id.* And, fourth, the petitioner must demonstrate, consistent with *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), that there was "cause" for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*.; see also *Scott v. Mitchell,* 209 F.3d 854, 864 (6th Cir.), *cert. denied*, 531 U.S. 1021, 121 S.Ct. 588, 148 L.Ed.2d 503 (2000).

*Greer v. Mitchell,* 264 F.3d 663, 672 (6th Cir. 2001)*.* See also *Bowling v. Parker,* 344 F.3d 487, 498-99 (6th Cir.2003), *cert. denied,* 543 U.S. 842 (2004) (discussing *Maupin*).

The second manner in which a state prisoner may procedurally default a claim is by failing to raise the claim in the state court or to pursue the same claim through the state's "ordinary appellate review procedures." *Id.* (citing *O'Sullivan v. Boerckel,* 526 U.S. 838, 848-49 (1999)). Any such claim will be held to be procedurally defaulted if, at the time the prisoner's habeas petition is filed, state law does not permit the prisoner to further pursue the claim. *Coleman v. Thompson,* 501 U.S. 722, 731-32 (1991); *Engle v. Issac,* 456 U.S. 107, 125 n. 28 (1982). In such instances, the problem with the claim is one of procedural default, not failure to exhaust available state remedies.

The two concepts, exhaustion and procedural default, are frequently confused, yet are distinct concepts. *Williams,* 460 F.3d at 806. The requirement of exhaustion relates only to those state remedies that remain available at the time the federal habeas petition

14

is filed. *Engle,* 456 U.S. at 125 n. 28. If no state remedies remain available because a state prisoner failed to pursue them within the time allotted by state law, then procedural default will bar federal court review, not a failure to exhaust available remedies as none remain available. *Id.*

Returning to the present action, on September 2, 1994, Taylor filed a post-conviction motion pursuant to RCr 11.42. At that time, he did not raise any claims regarding racial discrimination during the exercise of peremptory challenges. (See DN 12 - Inventory Item No. 5). However, in 1997, while his RCr 11.42 motion was still pending before the trial court, Taylor filed an Amendment to RCr 11.42 Motion, adding his *Batson* claim, among others, to his RCr 11.42 motion. (See DN 12 - Inventory Item No. 5). In that proposed amendment, Taylor alleged that the prosecutor's strikes resulted in a panel that was not a fair cross-section of the Fayette County community. *Id.* In response, the Commonwealth moved to dismiss the amendment as being prejudicial to the Commonwealth because it (a) was filed without leave of court, (b) was filed after the filing of the Commonwealth's response to the RCr 11.42 motion, and (c) would require an additional response by the Commonwealth if it were granted. (See DN 12 -Inventory Item No. 5). The trial court denied Taylor's RCr 11.42 motion; however, the trial court's order of denial did not address the juror discrimination issues raised in Taylor's Amendment to RCr 11.42 Motion. (See DN 12 - Inventory Item No. 5). Additionally, the trial court entered no order either granting or denying Taylor's Amendment to RCr 11.42 Motion, and the trial court entered no order either granting or denying the Commonwealth's motion to dismiss Taylor's Amendment to

RCr 11.42 Motion. In short, the trial court addressed neither Taylor's Amendment to RCr 11.42 Motion nor the Commonwealth's motion to dismiss that proposed amendment.

In appealing the denial of his RCr 11.42 motion, Taylor continued to assert his claim that the prosecution engaged in racial discrimination during the exercise of peremptory challenges.[5] In the appeal brief, Taylor expounded on this claim, again characterizing it as a violation of *Batson*, as well as *Swain v. Alabama,* 380 U.S. 202 (1965), the case which *Batson* overruled in part. Both *Batson* and *Swain* concern (1) a claim that the prosecution exercised peremptory challenges in a racially discriminatory manner, and (2) the test that a criminal defendant must meet in order to establish a *prima facie* case of racial discrimination in jury selection.

*Swain,* the rule at the time of Taylor's trial, held that a "State's purposeful or deliberate denial" to African-Americans of the opportunity to serve as jurors solely because of race violates the right to Equal Protection under the Fourteenth Amendment. *Swain*, 380 U.S. at 203-04. To establish a prima facie case under *Swain*, a criminal appellant had to show "through direct or indirect evidence, such as testimony or statistical proof, that the prosecutor had a systematic and intentional practice of excluding blacks from petit juries in criminal trials through the exercise of peremptory challenges, and that this practice continued unabated in [the appellant's] trial." *Love v. Jones*, 923 F.2d 816, 818 (1991).

---

[5] Claim I in Taylor's brief is captioned, in pertinent part, as follows: ". . . **THE JEFFERSON COMMONWEALTH'S ATTORNEY OFFICE HAS ENGAGED IN A SYSTEMATIC AND INTENTIONAL EXCLUSION OF AFRICAN-AMERICAN PERSONS FROM PETIT JURIES . . . AND VICTOR TAYLOR'S OWN PETIT JURY WAS SELECTED IN A RACIALLY-BIASED WAY, (RENDERING HIS CONVICTION AND DEATH SENTENCE UNCONSTITUTIONAL)**" (See DN 12 - Inventory Item No. 8).

*Batson* overruled that portion of *Swain* that sets forth the evidentiary showing necessary to establish a *prima facie* case of racial discrimination.

In *Batson*, the Supreme Court held that a defendant "may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Batson*, 476 U.S. at 96. To establish a prima facie case under *Batson*, a defendant must show that he is a "member of a cognizable racial group," that the prosecutor exercised "peremptory challenges to remove from the venire members of the defendant's race," and that those "facts *and any other relevant circumstances* raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Id*. (emphasis added). After the defendant makes out a prima facie case, the burden shifts to the prosecutor to come forward with a race-neutral explanation for the challenged peremptory strikes. *Id*. at 97.

The *Batson* Court noted that lower courts had interpreted *Swain* as placing a "crippling burden of proof" on a defendant which had effectively rendered a prosecutor's peremptory challenges immune from constitutional scrutiny. *Id*. at 92-93. *Batson* overruled *Swain*, in part, and removed this disability on a defendant's constitutional challenge to a prosecutor's peremptory challenges. Essentially, *Batson* eased this "crippling burden of proof" and provided the defendant with additional avenues ("other relevant circumstances") in which to establish a prima facie case of racial discrimination in jury selection.

In reviewing Taylor's appeal of the denial of his RCr 11.42 motion, the Kentucky Supreme Court determined that since *Batson* overruled *Swain*, Taylor's claim was governed by *Batson*, and that since Taylor's *Batson* claim was raised and rejected during Taylor's direct appeal, it was procedurally barred.[6] *Taylor v. Commonwealth*, 63 S.W.3d 151, 157 (Ky. 2001). Explaining its ruling, the Kentucky Supreme Court stated:

> . . . . Nonetheless, Taylor claims error under *Swain* and its "crippling burden of proof" rather than *Batson* because he alleged a *Batson* violation on direct appeal. The issue was decided against Taylor on direct appeal and, therefore, cannot be raised in his RCr 11.42 motion. *See Thacker v. Commonwealth*, Ky., 476 S.W.2d 838, 839 (1972), which holds, "It is not the purpose of RCr 11.42 to permit a convicted defendant to retry issues which could and should have been raised in the original proceeding, nor those that were raised in the trial court and upon an appeal considered by this court." The *Swain* claim is an attempt to get around this long-established rule. Even if we were to hold that *Swain* and not *Batson* was controlling, Taylor's claim would still fail for the same reason his *Batson* claim failed on direct appeal.

*Taylor*, 63 S.W.3d at 157.

Whether Taylor's claim that his Equal Protection rights under the Fourteenth Amendment were violated by the manner in which the prosecution exercised its peremptory challenges at trial is characterized as a *Batson* claim, a *Swain* claim, or a hybrid of the two, that claim was not procedurally defaulted. Rather, Taylor has exhausted this claim; therefore, he may pursue this claim in the present habeas petition. This conclusion is based on the fact that Taylor raised a *Batson* challenge on direct appeal, and he attempted to raise a similar claim in his RCr 11.42 proceeding in his proposed

---

[6] It is noteworthy that the Kentucky Supreme Court considered this claim to be "procedurally barred" rather than "procedurally defaulted." This Court presumes that the manner in which the Kentucky Supreme Court labeled this claim led to the conclusion that it was "procedurally barred." Because the *Batson* claim was raised on direct appeal, the appellate court concluded that Taylor was prohibited from re-arguing the same claim (as the court perceived it to be) in his RCr 11.42 motion.

Amendment to RCr 11.42 Motion, which went unaddressed by the trial court. Taylor raised this same claim in appealing the denial of his RCr 11.42 motion. Since Taylor has, at every opportunity, presented his *Batson/Swain* claim to the state courts (both trial and appellate) in Kentucky, his *Batson/Swain* claim is exhausted, not procedurally defaulted.

That being said, the Court returns to Taylor's motion for discovery relevant to his *Batson* claim, as presented at Grounds 12 and 13 of his habeas petition. Given the Kentucky Supreme Court's summary rejection of the *Batson* claim (concluding that it was without merit with no explanation for that conclusion); given that Taylor's *Batson* claim was not addressed on the merits by the trial court in Taylor's RCr 11.42 motion; and given that the Kentucky Supreme Court deemed it to be "procedurally barred" because it was raised on direct appeal, this Court concludes, out of an abundance of caution to preserve Taylor's Equal Protection rights, that he is entitled to discover additional information potentially relevant to his *Batson* claim.[7] *See Miller-El v. Cockrell,* 537 U.S. 322, 343 (2002).

Accordingly, **IT IS ORDERED** that:

1. Taylor's motion for discovery under Rule 6 of the Rules Governing Section 2254 Cases [R. 45] is **GRANTED IN PART**, and is limited to information relevant to his *Batson* claim.

2. Within ninety (90) days of the date of this Order, the Respondent shall provide Taylor's counsel with the following discovery:

---

[7] In concluding that Taylor is entitled to discovery relative to the *Batson* claim, the Court expresses no opinion on the merits of the *Batson* claim. Any consideration of its merits is premature, as the discovery sought may shed additional light on this claim.

a) any and all notes, documents, memoranda, or reports (including those recorded on paper, audiotape, videotape, electronic, or other form) generated by the Commonwealth in connection with Taylor's voir dire;

b) any and all notes regarding the jury selection proceedings in all other cases prosecuted by Ernest Jasmin, in which (1) he was the lead prosecutor and took the lead role in jury selections, and (2) the defendant was African-American, while he was employed by the Jefferson County Commonwealth Attorney's Office that are in Respondent's actual or constructive possession or control, with the exception that any notes by Ernest Jasmin in those cases when he held the position of Jefferson County Commonwealth Attorney and did not actively participate in voir dire and jury selection proceedings, including the exercise of peremptory strikes, are not discoverable and need not be produced; and,

c) any and all notes, documents, memoranda, reports, audio or video recordings, training materials, or manuals regarding jury selection policies and practices, including training materials on this subject, utilized by the Jefferson County Commonwealth Attorney's Office between the time Ernest Jasmin joined the Jefferson County Commonwealth Attorney's Office and the conclusion of Taylor's trial.

Signed on March 23, 2011

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY